Good afternoon, everyone. We have just these two tandem cases to hear this afternoon, and I'm told the Council is ready to proceed, and so I'm going to dispense with reading the short calendar. Let me just remind you that the masks muffle your voice a little bit, so you may want to speak up a little bit more than you might usually and move the microphone closer to your mouth. So with that, I believe we're ready to proceed. Thank you, Your Honor. May it please the Court, Sujatha Gibson appearing for the Keil v. de Blasio appellants. If it's all right with the Court, I'd like to reserve two minutes rebuttal. First, we want to thank you for hearing this on such an expedited basis, and I will launch in. Heresy is defined in Black's Law Dictionary and elsewhere as holding a belief that is logged with the majority orthodox dogma, either of a leader, a specific leader, or a preferred leader or church or one's own church. Historically, if you were found heretical, you could be fired, you could be hanged, shunned from society, and the consequences were quite severe. But the First Amendment is supposed to protect us from any instance of anything resembling a heresy tribunal or inquisition. Here, unfortunately, we see a resurgence of a heresy inquisition, and it wasn't just done by private individuals. It was done with the encouragement, the endorsement, the official adoption as official policy, and the enforcement of the results by the City of New York and the Department of Education. This is the arbitration process, I mean, the process that was set up pursuant to the arbitrable award, correct? Well, Your Honor, it was then adopted as DOE policy. I'm just trying to understand the factual record, which is fast moving here. Are all the plaintiffs you represent members of the union that was part of that arbitration? One is not. But, Your Honor, what we would like to stress here is two things. One, once the state adopted this policy as its own, made it an official policy, wrote to people even in their initial denials that were processed solely through the DOE, not even through the arbitrators, that they were reviewing it in accordance with that arbitration award, and then fired people or suspended them without pay based on the results of a facially unconstitutional policy. This became state action. And so we no longer deal, they don't, none of these contracts have waived the right to pursue discrimination claims brought upon them by the state or in which the state participated in. And so the PIAT, Penn Clause v. PIAT, does not apply here. They have not waived their right. In fact, their contracts say specifically that they have the right to enforce their discrimination claims in federal court or any other judicial forum. I think you may well be right on that. I just am trying to understand who was subject to the process. You said you had one client that was not a member of the union. Does that mean that other DOE employees who are not members of the union also went through this appellate process? Every DOE employee who wanted to seek a religious exemption was told this was the sole way that they could do it. And it wasn't this, and counsel will try to argue, I imagine, as they did in their papers for the first time here on appeal, that it was some piecemeal separated process. It was not. It was very clearly defined in the UFT award and very clearly discussed by the DOE that they would be having this one process. Everybody would apply through the DOE. What the DOE did was then just issue a blanket auto-generated denial to everyone that applied, 100% of all applicants, stating that because the mayor or Commissioner Chokshi's mandate did not allow them to come into buildings, they could not reasonably accommodate anybody. It would be an undue hardship. So they really cited to the mandate as the reason it was a hardship. Secondly, they did not review. They did not make a good-faith attempt under Title VII to review any of these applications individually or in good faith. They even denied people, and that's in the record and in my reply papers and brief below, they even denied people who were already remote or who easily could be, whose principals, you know, who were tech people, and their principals said, we really need them. Please let them stay on remote. They denied them on the basis of undue hardship. Then people could appeal. I will also point out not all of my plaintiffs or appellants elected to go through this process. Out of protest, one of my appellants said, you know, she had grown up in an orphanage in Columbia. She's Catholic. She is a strong Catholic, but she left the church intentionally because of the abuse that she saw, and she does not believe in going to get a clergy letter from a church that she just left. She still has those beliefs. They're still sincere and strong, but she believes she should be able to personally pursue them. It's an act of conscience for her. And so she, instead of going through this process, filed suit. And she was told there was no other way that she could apply for a religious exemption. So this was the sole mechanism, and the city adopted it. And the mayor also adopted it. Sole method for religious exemptions or sole methods for any sort of exemption? I believe for both, Your Honor. Both religious and medical. Yes, Your Honor. And the mayor also noted that he adopted this, that the city adopted this policy, that this wasn't just the DOE. In a press briefing on September 23rd, which is in the papers, he stated in response to a question of how the city was, what criteria they would be using to enforce this, the religious exemption selection process. And he said, first he started by saying that the pope had been quite persuasive that nothing in scriptures prevents anyone from getting a vaccine and suggested that all religious opposition was therefore invalid. And then he stated he thought there was only two religions that could be valid, which is preferencing religions quite blatantly. And he said, so very clearly we will only grant these exemptions to people who belong to, you can't have it be personal. You have to belong to a faith that has a very long tradition of it, such as Jehovah's Witness or Christian Scientist. Another thing to point out. But the mayor was not involved, was, I guess, was and is not involved in these decisions at all, is he? No, but Hortador's statements like that have often been shown as proof that this taints the entire regulation. So even if he has no involvement in how, in the arbitration process for the DOEs, he's not involved at all? Well, he officially endorsed it. He may have been involved in negotiating the terms of it, but he officially said it was the policy of the city in implementing the vaccine mandate. And the case law is, it's very important that this mandate is not just going to be looked at in a vacuum. You have to, when looking at the facial sufficiency in a religious discrimination claim, you have to look at all implementing policies, which would include this facially discriminatory implementing policies. I've cited a few different cases for this in the briefs, but Lukumi is a good example. They said that you can't just take each one separately, even the one that's so-called neutral on its face. When they work together, you have to look at them all together. Similarly, in Forsyth County, the nationalist movement, they said implementation policies or even a well-established practice would make it facially unconstitutional, even if on its face the overarching regulation is not, you know, doesn't have anything about religion in it. So in this instance, I think it is important that we acknowledge that this whole mandate, if you implement the mandate through a facially discriminatory policy, which nobody disputes happened, then the mandate itself needs to be strictly scrutinized. It might survive, but it might not. It has to be strictly looked at because there is no indicia of animus in its application. What about the relevance of the motion panel relief that's been put in place here? First, have any of your clients gone through or begun that process of having their exemption requests reconsidered? Not yet. They have until the 29th to apply. We strenuously object to this solution. First of all, it was introduced like five days ago. It's not really comprehensive. Nobody's been reinstated, and nobody's even been promised that the same thing won't happen that happened the first time around, when they applied and were summarily denied an undue hardship, which the city maintains is a good faith Title VII. Are you seeking to expand? You filed an amended class action complaint in the district court. District court right now doesn't have jurisdiction, I don't think. The case is up here. Why aren't problems with that ongoing process something that you could take up with the district court if this went back to the district court? Mostly timing. I will point out that even though our class action filing may or may not be at play here, we did in our initial complaint state over and over again that plaintiffs were seeking declaratory and injunctive relief for themselves and others similarly situated. So there's four or five different places in the complaint. At our initial hearing before Judge Giscopo, she asked us about that. And we said, yes, we did intend this to be impact litigation, and we were planning on amending the complaint most likely if she'd like us to proceed that way. So there was notice to everybody that this was intended in that manner. The reason that it's not that we can't wait is because November 30th is the deadline for everybody to waive their rights to sue. And though the district is now saying that they may have some process that they may make available to some, but not all of the wrongfully suspended employees, they are not saying that they're going to stay and have not agreed to stay the waiver deadline in the meantime of November 30th. But they've agreed with regard to your clients, the people that are before us this afternoon. But in terms of for the greater relief, they haven't. And so when they say that you can start applying as of December 3rd, well, by December 1st, you're terminated if you don't waive. So it's, you know, it's, I think, very troubling. Those timings are very troubling, and there's a good chance that people will lose their right to sue. Moreover, this is a facial challenge, and so we're looking for facial relief. If we say that this policy was wrongfully discriminatory, it can't be upheld for these other people who also admittedly went through it. Last, for our plaintiffs, it's also insufficient because really all they're being given is they're not even reinstated right now, which initially, actually, last week, counsel did suggest that they would be willing to reinstate them pending this review. They're doing that for all of the D.C. 37 employees that they've offered this process to, which they've offered to reinstate everybody and let them test weekly while they go through this process because it might be quite lengthy for, you know, large groups of people. Moreover, we cannot agree to have corporation counsel, who is adverse to our clients in this case, review their religious exemptions, especially after what just happened to them. It's extremely vulnerable to write down your most sacred, innermost religious feelings, lay them bare before a panel of strangers, have them summarily deny you, and then go through a proceeding in which the Department of Education accuses you of being a heretic for not following the Pope, even though you're not Catholic, or if you are Catholic, saying things like, well, I trust the Pope over your layperson's opinion, or, you know, if you're Buddhist, well, your views contradict to the Pope, so they're wrong. You know, it's they've been so traumatized that to just throw them back into another process that we have no idea whether it's going to be valid or actually uphold standards. Given the briefing, I highly doubt that it will. We can't say, for example, counsel is still arguing that because they judged people on the validity of their beliefs instead of the sincerity of their beliefs, that they complied with Title VII. It's frightening, and my clients do not want to submit to that process. They object. They've been wronged. They need to be reinstated. This mandate can be safely enjoined. We have from the Department of Health, the State Department of Health, already a testing requirement. Already 95% of the teachers are already vaccinated. This can't affect community spread, this tiny percentage of teachers in a sea of already unvaccinated people. It makes de minimis contribution, and we have experts that are well regarded, highly regarded professors from Stanford in public health, professors from Johns Hopkins in public health, people who've been teaching for 20 years, who have sat on the WHO. These are the people that advise the CDC. They're not anti-vaxxers, but they were prepared to testify. They did put in sworn declarations saying these teachers are not going to pose any significant danger to anybody, and we can reasonably accommodate their religious beliefs through testing, daily symptom checks, and the thing that every other school district in the entire state is doing. We'll hear from your colleague. Thank you. This is going to be a little tricky with the glasses. COVID has tested us all in many ways. Good afternoon, Your Honors, and may it please the Court. In his concurrence in Roman Catholic Diocese of Cuomo, Justice Gorsuch reminded us that government is not free to disregard the First Amendment in times of crisis. I humbly stand here before a distinguished panel of jurists in the world's greatest city and absolutely shudder to consider the many ways in which New York City has bludgeoned the First Amendment in this matter. Notwithstanding that this case epitomizes capable of repetition yet evading review, and that the defendants have conceded the mandate's constitutional infirmity, the city now asks this Court to simply rubber stamp a conceitedly constitutional disaster of historic proportions, one which forces thousands of committed educators to choose between their faith and their jobs. The city argues that the vaccine mandate is a neutral law of general applicability, and our papers have gone to great length in setting forth the lack of neutrality and the lack of general applicability based upon the various exemptions and carve-outs, as well as the discretionary individualized exemptions. But there is one prong that the city has completely overlooked, and that is the most fundamental, definitional problem. It is not applicable to the general public. The term general applicability, as used in Smith and as defined by the Code of Federal Regulations, means applicable to the general public, not some of, but the entire general public. The five cases upon which Smith itself expressly relied in announcing its rule involved laws which applied to everyone, everywhere, at all times. Reynolds v. United States, criminal laws against polygamy. Prince v. Massachusetts, child labor laws. Braunfeld v. Brown, criminal law concerning Sunday retail. Gillette v. United States, military enlistment under the Selective Service System. And finally, United States v. Lee, the payment of Social Security taxes. So is the argument that the only type of vaccine mandate that could pass, that would not be subject to strict scrutiny, is one that applied to everyone in a locality? Either everyone in a locality, Judge Livingston, or an entire class of people. We've set that forth in the brief. So if it is, for example, a law concerning prescription drugs, it would be applicable only to doctors and pharmacists, not to lawyers and butchers. That would be outside of the scope of the statute. But it would have to be to all doctors and pharmacists, not just the doctors and pharmacists of New York Presbyterian. Then someone in New York Presbyterian seeking an exemption therefrom, that would be scrutinized under strict scrutiny, not under rational basis under Smith. So there has to be this broad general applicability, and I fear, Your Honor, that many courts have kind of melded and merged neutral and generally applicable, as if they were one, but they are two distinct concepts. And all of the cases we set forth in our brief pre-Smith, there are literally, I think, four or five dozen cases that use that phrase, and they all, each and every single one of them, applies to the entire community, whether it's the entire country, the entire state, the entire locale, or an entire class of people within that locale, depending on the definition or the goal or the subject of the statute. But all DOE employees is not a broad enough class. No, Your Honor, because there are various New York City agencies that, in fact, right now, as we speak, have different standards applicable to all of them. Now, my wife is Austrian, and they just announced in the country of Austria a broad, generally applicable mandate. Can I just ask, are all your clients members of the union? I believe so, Your Honor. And as for, Your Honor, the concern with how broad any relief by this court should be and whether it should apply only to these cumulatively 14 plaintiffs, I believe, it clearly should go way beyond that. It must be applied, Your Honor, to all similarly situated people. This is a significant constitutional question. Do you know, or is it in the record, how many DOE employees are subject to the mandate? I don't know the answer to that. Do you know how many people went through this process, the arbitration setup process? We have not been provided with any numbers, unfortunately. And speaking of numbers, I should remind this court that, stunningly, New York City is one of approximately 800 districts in the state of New York that has a vaccine mandate. The only one. And the motion panel asked the city to produce evidence of any more. Thus far, we have not seen any. And we have, in fact, in our supplemental index, supplemental submission, provided a spreadsheet which was composed by a bunch of teachers who went to every single website and where there was nothing on the website, called numbers and spoke with people. And to the best of our unscientific ability, we produced a comprehensive document with hyperlinks demonstrating that there are no other districts with a vaccine mandate. I guess I'm having difficulty. If you could address the relief that the motions panel put in place for your clients, it seems to me that both plaintiffs' counsel here seek to be back in district court and expanding and seek to persuade the district court that the clash should be formalized, the remedy should be expanded. But your clients here, they're not going to be given the decision of whether or not to leave their employment on November 30th. They have a process to go through to make new requests. I'm having difficulty seeing with regard to them why keeping in place the motions relief and going back to district court isn't the best solution here. We're talking about preliminary relief, not the ultimate merits here. Correct, Your Honor. There are two reasons why that would not be sufficient, we believe. First, the actual relief ordered or remedy ordered by the motion panel is inadequate, we believe, under the law. Title VII is, as we know, a lower standard. There is a de minimis standard that has been applied by the courts in the TWA case, which several of the justices of the Supreme Court have expressed great concern with, of course. But the Supreme Court and this circuit has certified that Title VII was implemented to supplement, not supplant, federal laws and certainly not the Constitution. The city is a state actor. It must comply with First Amendment standards. And to simply throw thousands of teachers into a basket and be summarily denied because, oh, how is the city going to be able to afford? It's clearly going to be more than a de minimis burden impact on the city to be able to reassign them or what have you. Easy way out. But that's not what the Constitution provides. Each and every single one of these people is an individual with constitutionally protected religious liberty rights. Secondly, we have made a facial challenge. And it's an unusual facial challenge in that the city has conceded that the sole means of enforcement of this vaccine mandate heretofore is unconstitutional. So you have something the city has conceded is unconstitutional and there are thousands of people out there now stuck in this dilemma, in this quagmire. And if relief only issues for these 14 people, then this facially invalid law detrimentally affects so many people. And that means their spouses, their children, their medical insurance, their tenure, their entire life's commitment, ironically, to children, giving their life to city employees, especially teachers. They're not generally millionaires. They work very, very hard. They're the bloodline of our city. And after all of that, they ask for nothing more than to be allowed to express their free exercise rights under the Constitution in a fair and equitable manner. This court, I respectfully and humbly submit, this is the last chance to prevent the harm to all of those people. And I certainly pray that this court will do the right thing in this regard. Thank you. Good afternoon, Your Honors. May it please the Court. Susan Paulson on behalf of the city of Appalachia. Your Honors, as this Court has observed,  they're interested in turning back the clock to district court. And this Court is not the last chance to address these concerns. Right now, they seek an injunction pending appeal, and they repeatedly state in their brief that the necessity for this injunction is that they're facing a choice between, in their words, their livelihood and their faith. They face no such choice at this moment in time. The motion panel, as Your Honor has recognized, has entered an order staying the deadlines that would either require them to choose to go on extended leave or be subject to termination by the Department of Education by December 1. And this Court can reaffirm the interim relief and remand the matter back to district court to properly consider all of the new evidence that the appellants submit on reply and the disagreements that the appellants have with the process that is now in effect. You're asking us to reaffirm the motions panel relief remand. So the city is agreeing that the district court order is denying preliminary relief should be reversed. Your Honor, to the extent that the district court did not deny the request to enjoin the commissioner's order itself as a whole, that order should be affirmed. To the extent that the district court's order denied any relief to the plaintiffs, we believe that the motion panel appropriately entered provisional relief that will protect the plaintiffs from any immediate irreparable harm while the district court can consider on a full record the full nature of their claims. Can I just ask, again, these are the factual questions I keep circling back to, but how many DOE employees approximately are subject to the mandate? So how many employees does DOE have? I'm a little nervous to answer, but I'm going to say 180,000, but I haven't looked at that. And do we have any idea in this record how many DOE employees went through this appellate process? It was in the letter of response to the court, and it was, I believe, around, who went through the appellate process was 1,500. And was this the exclusive appellate process if you wanted to pursue either a medical exemption or a religious exemption on appeal? So what the arbitration award created, Your Honor, was this expedited review process. And the arbitration award itself said this was an alternative, but it was presented to the plaintiffs as, I mean, the arbitration awards came down on September 10th and 15th. The school had already started on September 13th, and it created this expedited process. And DOE did invite and encourage everybody who goes through this expedited process to have their request for religious and medical exemptions determined right away. But as you can see from the way the Commissioner of Health amended his order after the arbitration award came out, he indicated that the initial Commissioner of Health order had no process for requesting exemptions or incombinations at all. After the unions requested the arbitration and the arbitration award came down setting up this expedited review process, the Commissioner of Health amended the employee vaccine requirement order and amended it to state that it does not prohibit reasonable accommodations as required by law. So the Commissioner of Health recognized that it wasn't necessarily only the process, but I do concede that this was the process that was presented to employees essentially to urge them to expeditiously resolve their medical and religious exemption requests in order to have as many of them back in the classroom as possible. OK, so of the 1,500, some number were union members of the union presently before us and some were not. I have no numbers on that. I apologize, Your Honor. Your Honor, the provisional relief order allows these plaintiffs to have their religious exemption requests reviewed anew, which is exactly not subject to the criteria to which they object. Although the Kyle plaintiffs before this court don't ask the court to stay the Commissioner of Health's order writ large, the Cain plaintiffs do request that relief. But even the Cain plaintiffs in requesting that relief, as counsel has argued today, requested as a result of their claims that the criteria set forth in the arbitration award for this expedited review process are unconstitutional. This process is no longer relevant to these plaintiffs who have an opportunity to have their claims reviewed, not subject to those criteria. Now, they have concerns that they've expressed about what the Title VII review, what the citywide panel will look like. And those disagreements are properly remanded to the district court for consideration. What about the other? How should we think about the other people that went through this process? Of the 1,500, I'm assuming, again, we don't know how many were seeking medical exemptions, how many were seeking religious exemptions. I'm sorry. Those were just numbers for religious exemptions. Those are all religious. Yes, I'm sorry. Of the 1,500, do we know how many were appealing on the issue of they'd been denied undue hardship, as opposed to my faith wasn't recognized, I was discriminated against? The Department of Education, in making the initial eligibility determinations, unless there was an employee who did not represent that their objection to the vaccine was religious-based, they did not question the sincerity of the religious objection to vaccination for those who facially asserted it. And for those employees, they rejected them on an undue burden analysis. So the Department of Education has extended to all of those employees who appealed to the arbitration panel an opportunity to have their appeals considered anew by the citywide panel. And I will note that, although the plaintiffs have not sought that review because they have objections to the process, although the review was not announced to the rest of the broader group until Friday, already, as of, I think, 10 o'clock this morning when I called my client, already 50 employees had uploaded their materials to the portal seeking a review by the citywide panel. So it has been extended voluntarily by the Department of Education to anyone whose religious exemption request was denied through the arbitration appeals process. And as I said, within the first, I don't know when DOE sent it out on Friday, but within the first several hours of Monday, already numerous individuals, numerous employees had sought that opportunity to have their appeal considered anew. And the arbitration process is no longer being used. The arbitration process is no longer relevant. It was an expedited review process with these very strict and very short deadlines. And everybody who decided to proceed through it, as of our, there were, you know, like, there were under 10 still pending appeals for some reason seeking further information. But generally, the process has been completed. Your Honor, most importantly, the motion panel has granted relief sufficient to protect the plaintiffs while they litigate the merits of their free exercise claims. No actions will be, if this court decides to reaffirm the interim relief, then no action will be taken against their employment based upon their noncompliance with the vaccine requirement. And they will have this opportunity to have a redetermination of whether or not they are entitled to a reasonable accommodation based on their sincerely held religious beliefs. I think your adversaries mentioned something about offers of reinstatement to members of another union. So the process for the, so on October 20th, the Commissioner of Health issued an employee vaccine requirement for the rest of the city workforce. And that vaccine requirement is different than the vaccine requirement that was issued for employees of the Department of Education. And that is largely because of the perceived, particularly at the time that it was issued, when there actually was no vaccine even available to students under 11, now it has recently become available, but there still is no vaccine that has been, you know, has received full approval for children. And because of the different circumstances, there was no, they were not contemplating reinstating it and allowing people to continue in their jobs unvaccinated because of the large population of unvaccinated New York City school children. Your Honor, I would ask this Court to reaffirm the interim relief order to protect the plaintiffs in the status that they are now, and remand this matter to the District Court, where it can probably consider the new evidence the plaintiffs have submitted, the new process that is in place to which they have objections. In the other matters, the expanded class of individuals that they seek relief on behalf of, you know, they both sought to, although they assert that throughout this they have expressed views on behalf of a larger population of individuals, there are no class allegations, there has been no class certified yet, and they have now filed class complaints seeking that. I mean, their argument is that this is, in some sense, this is a facial challenge, and so in the nature of a facial challenge, if we accept it, relief goes out on a class-wide basis. Sure, Your Honor, but the Commissioner's order itself is a facially neutral order that is generally applicable, so the Commissioner's order should not be enjoined, and to the extent that they're challenging the criteria established in the Arbitration Awards and the appeals process, this Court can enjoin implementation of those. They are essentially no longer relevant, right? They were applied to a class of people. All the people they were applied to have an opportunity to have a fresh review of their religious exemption request, and, you know, if they seek that review, these plaintiffs, their deadlines have been stayed. For the others, to the extent that they seek that review, their deadlines will be stayed as well. And certainly, although they say that's not sufficient because they have until December 3rd, as you can see, many of them immediately sought review in order to, you know, stay their deadlines so they won't be subject to the November 30th or December 1st deadlines. So if they seek review... Okay, yes, this is helpful. So if they seek review, these people not before the Court, that automatically tolls the November 30th. It does, Your Honor. They have a window of time to submit materials through the portal for the citywide panel to review. The panel itself, I believe, has held to a two-week deadline to determine those appeals, and then after the determination, the employee will have an additional seven days to decide whether they want to opt in to the extended leave program or not. So, yes. So as long as they timely submit materials, they too will not be subject to those employment consequences. Thank you. We'll hear rebuttal. Thank you, Your Honor. Your Honor, a few factual disputes. Number one, the arbitration award was not some alternative expedited process. In fact, it said right on its face, the process set forth herein shall constitute the exclusive and complete administrative process for the review and determination of requests for religious exemptions to the mandatory vaccine policy. Number two, counsel says that plaintiffs that are not named plaintiffs will somehow have until December... will have their waiver deadline waived if they apply now. However, in the underlying papers, the DOE asserts that they will not be able to apply until December 3rd, which is three days after their waiver deadline and two days after the district has announced they will terminate them. Number three, the relief of not actually reinstating them but merely giving them another chance to go through the process of having adverse attorneys in this case who are ethically conflicted re-review the applications that the DOE already denied based on supposed undue hardship is not relief. They do not have their rights preserved pending status quo. Every single day that these people have to choose between feeding their families, potentially, or choosing their faith is a new harm. Many people have paved... Originally, I think it was 30,000 people who were seeking exemptions of some kind. It then dwindled to 8,000 who were initially declined. Now we're talking about a couple thousand left, and some of those, maybe you can say some were insincere. But there are news reports of people crying as they got vaccinated, praying to God and saying, I'm so sorry. This is not okay. Every day that they're being coerced in this way is a harm. And that falls under Espinoza, the coercion doctrine of the Establishment Clause, and it also falls under Larson, where you have to review the implementing policy as well as the overarching one. It's very clearly articulated. Thank you so much. May I proceed? Thank you, Your Honor. A few specific points. The unconstitutional option, namely the arbitrator's award, is still alive and well. It's still there. It hasn't been banished. This city has not negated it, reversed it. It's still there and in play as we speak. So if this court declares it facially unconstitutional, that's the relief that makes it go away. The city claims that they voluntarily made this new option available to everyone. Everyone doesn't know whether it is or isn't available. But it wasn't quite voluntary. We submitted in our supplemental findings evidence that Friday morning, the general public, not the general employees, not just the 14 plaintiffs, did not have that option. At about 2 p.m. Friday afternoon, the city received somewhere between 500 and 2,000 e-mails from employees demanding essentially to be covered by the same interim relief that was ordered by the emergency panel. They did not receive responses until about 6 o'clock when they suddenly got e-mails saying, guess what, you have a new option. We're offering you another option, another alternative. So I'm not quite sure how voluntarily that option was made available to those employees. November 30 still looms as the deadline upon which these people need to make their decision, to choose between their faith and their jobs. The commissioner's mandate, as I noted earlier, is not generally applicable, even without the arbitrator's report. So on its face, it's unconstitutional, and therefore this court should entirely render it unenforceable. This case is not about being pro or anti-vaccine. It's not about left, right, or center. It's about the very First Amendment to the United States Constitution and everything it stands for. I most respectfully ask that this court grant plaintiffs' request for relief in a manner consistent with the First Amendment, with common sense and general principles of fairness and equity. I thank the court for its time. Thank you all for coming in this afternoon. We will take the matter under advisement.